# EXHIBIT A

eRecorded in Philadelphia PA  Doc Id: 53072687
06/17/2016 01:27 PM  Page 1 of 8  Rec Fee: $222.00
Receipt#: 16-58603
Records Department  Doc Code: M

Return to: Dawn Tetlak/AEG
5455 Detroit Rd, STE B
Sheffield Village, OH 44054
440-716-1620

Return To:
Citizens Bank of Pennsylvania
Consumer Loan Operations - RJW215
1 Citizens Drive
Riverside, RI 02915

Prepared By:
Citizens Bank of Pennsylvania
Beth Romano
Retail Lending Services
480 Jefferson Boulevard
Warwick, RI 02886
1-800-894-4619

Parcel ID# 37-1-3139-00
Collateral Address:
1114 W NEVADA ST, PHILADELPHIA, PA 19133

Master Mortgage Form Recorded By Citizens Bank of Pennsylvania  In Volume
NA                                    , Page NA
Instrument # 52908171                     , PHILADELPHIA        County,
Pennsylvania Records

## PENNSYLVANIA
## HOME EQUITY LINE OF CREDIT
## OPEN-END MORTGAGE
### (Securing Future Advances)
## INCORPORATING THE OPEN-END MASTER MORTGAGE FORM
## RECORDED BY CITIZENS BANK OF PENNSYLVANIA
### MAXIMUM PRINCIPAL AMOUNT $  45,000.00

KNOW ALL MEN BY THESE PRESENTS:

That on 05/17/2016   , the mortgagor,

IDA SPRUILL,

PAMMSFOPEN 12 15 F REV.          Page 1                    05/16/2016

Accurate Group

whose address is 1114 W NEVADA ST, PHILADELPHIA, PA 19133
("Property Address"); (hereafter "Borrower"), in consideration of a loan in the amount of $ 45,000.00
made available by CITIZENS BANK OF PENNSYLVANIA, a Pennsylvania banking association, whose
address is One Logan Square, 130 North 18th Street, Philadelphia, PA 19103 (hereafter "Lender"), the
receipt whereof is hereby acknowledged, does hereby grant, bargain, sell and convey to the said Lender, its
successors and assigns forever. the following real property, situated in the County of PHILADELPHIA
in the State of Pennsylvania ("Property") and more particularly described as follows:

### SEE EXHIBIT A ATTACHED HERETO AND BY REFERENCE MADE A PART
### HEREOF

and all the Estate, Title and Interest of the said Borrower either in law or equity, of, in and to the said
premises; together with all the privileges and appurtenances to the same belonging, and all the rents, issues
and profits thereof; to have and to hold the same to the only proper use of the said Lender, its successors and
assigns forever.

1.  _Definitions:_ In addition to the definitions set forth in the Open-End Master Mortgage form referenced
in Section 4 hereof. which definitions shall apply to all capitalized terms contained herein which are not
otherwise specifically defined, the following term shall have the following meaning:

    (a) "Note" means the Promissory Note or Agreement signed by Borrower, delivered to Lender and
dated 05/17/2016 . The Note states that Borrower owes the Lender $ 45,000.00 plus interest.
Borrower promises to pay this debt in regular Periodic Payments and to pay the debt in full not later than
05/23/2041 .

2.  **THIS IS A FUTURE ADVANCE MORTGAGE.** The repayment of which debt is evidenced by a
Credit Line Agreement (the "Agreement") made in favor of the Lender by the Borrower and dated the same
date as this Security Instrument, under which the Borrower and the Lender reasonably contemplate that there
will be a series of advances, payments and readvances but which limits the aggregate principal indebtedness
at any time outstanding to a **maximum principal amount, excluding protective advances, of**
$ 45,000.00 including, but not limited to, any future advances, with interest thereon.

3.  _Payment of Principal, Interest and Other Charges._ Borrower will pay when due the principal of, and
interest on. the debt evidenced by the Note and any prepayment charges and late charges due under the Note.

4.  _Incorporation of Terms and Conditions of Master Mortgage Form Recorded by Lender._ Borrower
covenants and agrees that it shall be bound by the terms, conditions and provisions set forth in that certain
Open-End Master Mortgage Form recorded in Official Record in Volume
NA , Page NA . Instrument
#52908171 , of the PHILADELPHIA County ("Master Mortgage").
Upon the occurrence of a default under the terms of such Master Mortgage, Lender shall be entitled to pursue
all remedies specified in such Master Mortgage against the Borrower and the Property.

Borrower has been provided with a copy of the Master Mortgage from Lender and acknowledges receiving it along with this Home Equity Line of Credit Open End Mortgage.

5.    **Defeasance.** This Security Instrument is given to secure the advances made by Lender to Borrower under the Note, which Note has a maturity date of 05/23/2041  . Upon the repayment in full of the amounts advanced under the Note, all accrued interest under the Note and all incidental amounts as set forth in the Master Mortgage, this Security Instrument shall be void.

6.    **REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST**  Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over the Security Instrument to give Notice to Lender's address set forth on page one of the Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

**REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK**

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in the Security Instrument and in any Rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered:

_____

**IDA SPRUILL**

_____

_____

_____

_____

_____

_____

_____

**GENERAL PROVISIONS INCORPORATED BY REFERENCE AND NOT TO BE RECORDED**

SEE MASTER MORTGAGE FORM REFERRED TO HEREIN

Page 4

### CERTIFICATE OF RESIDENCE OF MORTGAGEE

I do hereby certify that the precise address and principal place of business of the within named

mortgagee is:   One Logan Square, 130 North 18th Street, Philadelphia, PA  19103.

Citizens Bank of Pennsylvania

By: _Nilda I. Santiago_

Name: _Nilda I. Santiago_

Title: _Senior Personal Banker_

Page 5

## INDIVIDUAL ACKNOWLEDGMENT

STATE OR COMMONWEALTH OF ___PA___ )

COUNTY OF ___Philadelphia___ )SS:

On the ___17th___ day of ___May___, ___2016___,
before me appeared

**IDA SPRUILL**

to me personally known to be the person(s) whose name(s) is/are
subscribed to this instrument, and such person(s) acknowledged that
he/she/they (i) executed the same for the purposes therein contained,
and (ii) executed this instrument as their free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

(Official Seal)

**Notary Public**

**Notarial Seal**
Commonwealth of Pennsylvania
NOTARIAL SEAL
Teresa Graddick, Notary Public
Philadelphia City, Philadelphia County
My Commission Expires November 30, 2016

Attention Registry of Deeds/Town or City Clerk:

Mail to: Citizens Bank
Consumer Finance Operations - RJW215
1 Citizens Drive
Riverside, RI 02915

ACKPA 01/16

**EXHIBIT A**

SITUATE IN THE CITY OF PHILADELPHIA, COUNTY OF PHILADELPHIA
AND STATE OF PENNSYLVANIA:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE TWO STORY
BRICK MESSUAGE OR TENEMENT THEREON ERECTED,

SITUATE ON THE SOUTH SIDE OF NEVADA STREET AT THE DISTANCE
OF 106 FEET, 9 INCHES WESTWARD FROM THE WEST SIDE OF 11TH
STREET IN THE 37TH WARD OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID NEVADA STREET 16
FEET, 7 INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR
DEPTH SOUTHWARD BETWEEN PARALLEL LINES AT RIGHT ANGLES TO
SAID NEVADA STREET 60 FEET.

BEING THE SAME PREMISES WHICH BETTY R. HILL BY DEED DATED
MARCH 5, 1982 AND RECORDED ON DECEMBER 23, 1986 IN
DEPARTMENT OF RECORDING OF DEEDS IN AND FOR THE CITY OF
PHILADELPHIA IN DEED BOOK E.E.P. 418 PAGE 147 GRANTED AN
CONVEYED UNTO BETTY R. HILL AND ROSTA HILL, HER DAUGHTER IN
FEE.

TOGETHER WITH ALL AND SINGULAR THE BUILDINGS, TENEMENTS,
HEREDITAMENTS, IMPROVEMENTS, WAYS, STREET, ALLEYS,
DRIVEWAYS, PASSAGES, WATERS, WATER-COURSES, RIGHT,
LIBERTIES, PRIVILEGES, HEREDITAMENTS AND APPURTENANCES,
WHATSOEVER UNTO THE HEREBY GRANTED PREMISES BELONGINGS,
OR IN ANY WISE APPERTAINING, AND THE REVERSIONS AND
REMAINDERS, RENTS, ISSUES, AND PROFITS THEREOF; AND ALL THE
ESTATE, RIGHT, TITLE, INTEREST, PROPERTY, CLAIM AND DEMAND
WHATSOEVER OF THE SAID GRANTOR, AS WELL AT LAW AS IN
EQUITY, OF, IN, AND DO THE SAME.

BEING NO. 1114 W. NEVADA STREET

THIS BEING THE SAME PROPERTY CONVEYED TO IDA SPRUILL, DATED
08/16/2007 AND RECORDED ON 09/14/2007 IN BOOK 1172, PAGE 290, IN
THE PHILADELPHIA COUNTY RECORDERS OFFICE.

PARCEL NO. 37-1-3139-00

Accurate Nbr
Address : 1114 W NEVADA ST, PHILADELPHIA, PA

## HOME EQUITY LINE OF CREDIT AGREEMENT

Borrower(s):  XOA  SPRUILL

Lender:        Citizens Bank of Pennsylvania
               1735 Market Street
               Philadelphia, PA 19103

Date of Agreement:  05/17/2016

This HOME EQUITY LINE OF CREDIT AGREEMENT ("Agreement") contains the terms which
govern your line of credit (the "Credit Line" or the "Credit Line Account") issued through Citizens Bank
of Pennsylvania and hereafter referred to as "Citizens Bank". The Agreement sets forth the terms under
which Citizens Bank extends credit advances against your Credit Line Account. Each person who signs
this Agreement will be bound by its terms and conditions and will be responsible for paying all amounts
owed. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every
person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our,"
and "Lender" mean Citizens Bank as identified above. You agree to the following terms and
conditions:

1.  **Promise to Pay.**  You promise to pay Citizens Bank the total of all credit advances made by us under
the terms of this Agreement, any other charges, and FINANCE CHARGES due, together with all costs
and expenses for which you are responsible under this Agreement or under the "Mortgage" which secures
this Agreement. You will pay your Credit Line according to the payment terms set forth below.

2.  **Term.**  The term of your Credit Line will begin as of the date of the Agreement ("Opening Date")
and will continue until termination of your Credit Line Account. All indebtedness under this Agreement,
if not already paid pursuant to the payment provisions below, will be due and payable upon termination.
The "Draw Period" of your Credit Agreement will begin on a date, after the Opening Date, when the
Agreement is accepted by us in the Commonwealth of Pennsylvania, following the expiration of the right
to cancel, and the meeting of all of our other conditions and will continue for a period of ten (10)
years, subject to the terms and conditions of this Agreement. You may obtain credit advances during the
"Draw Period" not to exceed, at any time, the credit limit of your line of credit, which is
$ 45,000.00        and more fully described in paragraph 5, "Credit Limit". After the Draw Period
ends, the Repayment Period will begin; and you will no longer be able to obtain credit advances. The
length of the Repayment Period is Fifteen (15) Years. The end of the Fifteen (15) Years is known as the
"Maturity Date".

3.  **Payments.**
    **a) Draw Period**
    You can obtain advances of credit for ten (10)      years (the "Draw Period"). You have chosen
    the payment option checked below. The option checked below is based on the option that was
    indicated on your home equity application. If no option was indicated on your application, the
    loan will default to Option One (Interest Only).
    ☒  **Option One:**  Monthly interest-only payments - Under this option, your payments will be due
    monthly and will equal the finance charges that accrued on the outstanding principal balance
    during the preceding billing period, plus insurance premiums (if any), all other charges and any
    amount past due.  The Minimum Payment will not reduce the principal that is outstanding on your
    Credit Line Account.  This option will result in greater expenses over the life of the Credit Line
    Account.
    ☐  **Option Two:**  2% of the balance - Under this option, your payments will be due monthly and will
    equal 2% of the New Total Balance (which includes the principal balance and outstanding
    FINANCE CHARGES as of the end of the billing period plus insurance premiums [if any], and
    all other charges), plus late fees and any amount past due.  The Minimum Payment will equal
    $20.00 or the  outstanding balance on your Credit Line Account, whichever is less.

    **b) Changing Your Draw Period Payment Option**

    You may change your Draw Period Payment Option from Option 1 to Option 2, or from Option
    2 to Option 1.  You must ask us in writing at least 15 days before the start of the billing cycle in
    which you want to change your Draw Period Payment Option.
                                                                          05/16/2016

We do not have to let you change your Draw Period Payment Option if; (i) any of your payments under this agreement are past due at the time you make your request, (ii) your account balance is higher than your credit line at the time when you ask us to change your Draw Period Payment Option, or (iii) we, in our sole discretion, believe that your account is not in good standing.

### c) Repayment Period

*After the draw period ends, you will no longer be able to obtain credit advances and must pay the outstanding balance over 15 years (the "repayment period").* During the repayment period, payments will be due monthly. Your minimum monthly payment will equal 1/180th of the balance that was outstanding at the end of the draw period plus the **FINANCE CHARGES** that have accrued on the remaining balance, plus any amount past due and all other charges or $20.00; whichever is greater.

### d) Payments

All payments must be made by a check, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address on any business day will be credited to your Credit Line as of the date received so that finance and other charges will not accrue. However, the Lender may delay for a reasonable time the availability of the funds until Lender has had an opportunity to confirm the validity of the payment. Payments may also be made at any of our branch offices. You may also make payments by authorizing us to debit your Citizens Bank checking account each month in the amount of the Minimum Payment. Payments sent by mail must be mailed early enough to insure receipt by us on the Payment Due Date.

**4. Application of Payments.** Unless otherwise agreed or required by applicable law, during the Draw Period, payments and other credits will be applied in the following order: to the oldest unpaid billings first, and then sequentially to any other unpaid billings from the oldest to the most current. Payments in excess of billed amounts will be credited to your account. During the Repayment Period, your payments will be applied in the following order, assuming that it is made by the Payment Due Date: (a) The interest portion of the unpaid Minimum Payment; and (b) any additional amount paid that exceeds interest due will next be applied to the principal portion of the unpaid Minimum Payment. If you make a payment greater than the Minimum Payment, but less than the Total Due shown on your periodic statement you will still be required to make the Minimum Payments in the months that follow. We will refund to you any credit balance upon request if there is a credit balance on the date we receive the refund request.

**5. Credit Limit.** This Agreement covers a revolving line of credit for $ 45,000.00 which will be your "Credit Limit" under this Agreement. This is the maximum credit that is to be extended to you. If the Credit Limit is exceeded, you will be in default of a material obligation under this Agreement and the provisions of paragraph 7, "Limitations on Use of Checks" will apply. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you.

**6. How to Use the Credit Line.** You may obtain credit advances under your Credit Line by writing a preprinted "check" that we will supply to you. Credit Line checks are specially designated checks which can be completed just like any other check. Each check written and negotiated will create a check advance from us to you. Checks drawn on the Account on forms other than those forms supplied by us for that purpose will not be honored. Each check you write will be paid with a check advance from your Account unless you are in default under this Agreement, as described in paragraph 23, "Termination and Acceleration", or in those circumstances described in paragraph 7, "Limitations on Use of Checks." Your use of a check will be reflected on your periodic statement as a check advance. Credit Line checks will not be certified by us and you agree that we may retain the actual checks written by you, and need not return the original checks to you. We may also provide additional ways of using your Account from time to time.

If there is more than one person authorized to use this Credit Line Account, each of you agree not to give us conflicting instructions, such as one of you telling us not to give advances to the other. Any such instructions will not be followed by us. However, any one of you may cancel your Credit Line under paragraph 30, "Cancellation by You".

**7. Limitations on Use of Checks.** We reserve the right not to honor Credit Line checks in the following circumstances:

    (a) Your Credit Limit has been, or would be, exceeded by paying the check.
    (b) Your check is post-dated. If a post-dated check is paid and as a result any other check is returned or not paid, we are not responsible, subject to any applicable law.
    (c) Your checks have been reported lost or stolen.
    (d) Your check is not signed by an "Authorized Signer" as defined below.
    (e) Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the check.
    (f) You are in violation of any other transaction requirement or would be if we paid the check.

If we pay any check under these circumstances, you must repay us, subject to applicable laws, for the amount of the check. The check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor.

**8. Authorized Signers.** The words "Authorized Signer" as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, and (b) signs this Agreement.

**9. Stop Payments.** We do not honor stop payment orders for checks drawn against your Credit Line Account. You therefore should not use your Credit Line Account if you anticipate the need to stop payment. You agree that we will have no liability to you or to any other party because we do not honor stop payment orders.

**10. Lost Checks.** If you lose your checks or someone is using them without your permission, you agree to notify us immediately. The fastest way to notify us is by calling us at (800) 922-9999. You also can notify us at Citizens Bank Consumer Loan Servicing, 1 Citizens Drive, Riverside, RI 02915

**11. Charges to Your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, under the Mortgage or under any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph 13 (a), "Insurance" or as described in the Mortgage. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**12. Collateral.** This Agreement is secured by a Mortgage dated <u>05/17/2016</u> to us on property located in <u>PHILADELPHIA</u> County, State or Commonwealth of <u>PA</u>, (the "Property"). We have the right, but are not required to take such action as is necessary to protect our Security Interest described in this paragraph. Any amounts we may pay in exercising our right to protect our Security Interest must be paid by you on demand, and will bear interest at the **ANNUAL PERCENTAGE RATE** then applicable to your account.

**IMPORTANT NOTICE ABOUT YOUR REAL PROPERTY COLLATERAL:** If the deed to the property you are pledging as security for this loan includes more than one parcel of land, the mortgage you are requesting will be secured by ALL parcels described in your deed. If your deed contains more than one parcel of land and you do not want to pledge all of them as security for your loan you should contact your legal representative.

**13 (a). Insurance.** You must obtain insurance on the Property securing this Agreement through any company of your choice that is reasonably satisfactory to us. With respect to hazard (non-flood) insurance, the insurance shall be for the replacement cost of the buildings or appurtenances on the Property. You must name Citizens Bank of Pennsylvania as its interests may appear as mortgagee on all required insurance policies. The insurance you maintain must provide for Ten (10) days notice of cancellation to us. If the Property is located in a designated Flood Zone, you must also maintain flood insurance on the Property in an amount we disclosed to you in writing before you entered into this Agreement. Subject to applicable law, if you fail to obtain or maintain insurance as required herein or in the Mortgage, we may purchase insurance to protect our own interest, and add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

In the event the Borrower fails to obtain and maintain any insurance on the Property required by the Lender, the Borrower understands and agrees that the Lender may, at its option (unless required to do so by applicable law), obtain and maintain the required insurance and pay the premium(s) for such insurance, and either: (i) add the cost of the insurance to the unpaid principal balance owed under the Agreement (in which case the Borrower agrees to repay the cost of the insurance in accordance with the repayment terms of the Agreement), (ii) bill the Borrower separately (in which case the Borrower agrees to pay the bill immediately) or we will (iii) establish escrow pursuant to Section 13 (b) "Escrow". The Borrower agrees to pay interest on any such amounts at the interest rate provided in the Agreement until such amounts are repaid in full. The Borrower understands and acknowledges that any insurance obtained and maintained by the Lender may (i) only protect the interests of the Lender and any other creditor with

Page 4

a prior mortgage on the Property, and (ii) be more expensive than insurance obtained and maintained by the Borrower.

**13 (b). Escrow.** If lender determines that borrower has not paid property taxes or community associates dues/fees/assessments, or has not established insurance as required by Section 13 (a) "Insurance", Lender may establish an escrow account pursuant to the Real Estate Settlement Procedures Act, and require borrower to pay monthly amounts into said escrow account. Borrower agrees that the escrow account payment will be in addition to the payment amounts otherwise agreed to in this Agreement.

**14. Right of Setoff.** We have the right under the law to transfer funds held in any deposit account that any person who signs this Agreement has with us or an affiliated bank, to pay or reduce your obligations if you are in default under this Agreement or we terminate or accelerate your Credit Line Account. You grant to us a contractual possessory security interest in, and hereby assign, convey, deliver, pledge, and transfer to us all right, title and interest in and to, your accounts with us (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts you may open in the future, excluding however all IRA, Keogh, and trust accounts. You authorize us, to the extent permitted by applicable law, to charge or set off all sums owing under this Agreement against any and all such accounts.

**15. Periodic Statements.** We will send you a periodic statement for all check advances made under this Agreement during the Draw Period and for all monthly payments due during the Repayment Period. The statement will show, among other things, payments and credits, check advances, **FINANCE CHARGES**, insurance, and other charges, your Previous Total Balance, and your New Total Balance. Your statement also will identify the Minimum Payment you must make for that billing period and the Payment Due Date. All periodic statements shall conclusively be considered to be correct and accepted by you unless we are notified in writing of any alleged errors within 60 days after receipt.

**16. FINANCE CHARGES.** You will pay a **FINANCE CHARGE** on the outstanding amount of the principal balance under your Credit Line, once each billing cycle during the Draw Period and the Repayment Period. The **FINANCE CHARGE** will begin to accrue on the date advances are posted to your Credit Line Account. There is no "grace period" which would allow you to avoid a **FINANCE CHARGE** on your Credit Line advances. **FINANCE CHARGES** do not accrue on any undisbursed proceeds.

**17. Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** We figure the **FINANCE CHARGE** on your account by applying the daily periodic rate to the average daily balance of your Credit Line Account and then multiply by the number of days in the billing cycle. To get the average daily balance, we take the total beginning balance of your Credit Line Account each day and add new advances and subtract the principal portion of any payments and credits. The beginning balance for the period is the New Principal Balance amount from your previous statement. To determine the principal portion of a payment, subtract any unpaid **FINANCE CHARGES** then insurance premiums (if any) and membership fees and other charges (if applicable). This gives us the daily principal balance each day. Then we add up all the daily principal balances for the billing cycle and divide the total by the number of days in the billing cycle (the number of days since your last statement). This gives us the average daily balance. The average daily balance does not include **FINANCE CHARGES**, insurance premiums, membership fees or other charges.

**18. How You May Compute the FINANCE CHARGES** On Your Line of Credit Account. When the average daily balance has been computed, you multiply the average daily balance by the daily periodic rate which is arrived at by dividing the **ANNUAL PERCENTAGE RATE** by the number of days in the year. The result is multiplied by the number of days in the billing cycle. This figure is the **FINANCE CHARGE** assessed for the billing cycle.

**19. Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** as follows. We start with an independent index, (the "Index"), which is The Wall Street Journal Prime Rate, published daily in the listing of "Money Rates." We will use the Index value published on the last business day of each month for any **ANNUAL PERCENTAGE RATE** adjustment. If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement similar to the original Index and margin, and the new Index and margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the rate in effect at the time the original Index becomes unavailable. The Index is not necessarily the lowest rate charged by us on our loans. To determine the Periodic Rate that will apply to your Credit Line Account, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the **ANNUAL PERCENTAGE RATE**, we multiply the Periodic Rate by the number of days in a year (daily). This result is the **ANNUAL PERCENTAGE RATE**. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

The Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Any increase in the Periodic Rate will take the form of higher payment amounts. Adjustments to the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** resulting from changes in the Index will take effect on the first day of the next billing cycle. The maximum **ANNUAL PERCENTAGE RATE** during the Draw Period of your Credit Line will be  18.000  . The maximum **ANNUAL PERCENTAGE RATE**

during the Repayment Period of your Credit Line will be 18.000    or the maximum rate allowed by applicable law. In no event will the **ANNUAL PERCENTAGE RATE** be less than 2.500% during the life of your Credit Line. As of the date this Agreement was printed, the Index is 3.50   % per annum. Based on that Index value, we estimate that the initial Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line for the first billing cycle will be as stated below: The initial Periodic Rate and corresponding **ANNUAL PERCENTAGE RATE** actually in effect during the first billing cycle, which will be disclosed on your first periodic statement, may differ from these estimates if the Index changes between the date this Agreement was printed and the date you sign this Agreement.

| Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|
| 5.000 | 8.5000 | 0.0232 |

**20. Conversion Option.** You can exercise the option to convert to a fixed rate only at the end of the Draw Period. Your **ANNUAL PERCENTAGE RATE** may increase if you exercise this option to convert to a fixed rate.

The fixed rate will be determined as follows. The **ANNUAL PERCENTAGE RATE** will be fixed during the entire Repayment Period and will be equal to 2½ % added to the Index which is in effect on the date that the final Draw Period payment is due, but will not be more than 18.00%. In the event the Prime Rate is published as a range of rates, then the lowest rate published shall be the Index. If The Wall Street Journal ceases publication of the Prime Rate we may select a substantially similar Index which we will use to determine the **ANNUAL PERCENTAGE RATE** for the Repayment Period.

In no event shall the **FINANCE CHARGE** exceed that allowable under any applicable law. If it is determined that the **FINANCE CHARGE** would, except for this provision, exceed the maximum rate allowable, all excess payments shall be considered to be payments on the principal balance due hereunder and shall be applied accordingly.

**21. Annual Fee.** There is no Annual Fee for the first year. Thereafter, a non-refundable Annual Fee of $50 will be charged to your Credit Line Account on each anniversary of your Credit Line, during the Draw Period.

**22 (a). Late Charges.** Depending on the state or commonwealth identified above, your late fee will be calculated as follows:

> Your payment will be late if it is not received by us within 15 days of the "Payment Due Date" shown on your periodic statement. If your payment is late, we may charge you 5.000% of the payment or $20.00, whichever is less.

**22 (b). PREPAYMENT:**  If you pay off the entire balance and close your line of credit account before the due date, you will not have to pay a fee.

**22 (c). Automatic Payment Benefit:** Borrowers will be eligible to receive a 0.25 percentage point interest rate reduction on their Citizens Bank Home Equity Line of Credit if, at origination, borrower elects to have payments automatically deducted each month from a Citizens Bank checking account the borrower designates. If we are unable to successfully withdraw the automatic deductions from the designated account two or more times within any 12 – month period, Citizens Bank reserves the right to remove eligibility.

**23. Termination and Acceleration.** The entire unpaid balance of your Credit Line Account, including unpaid fees and **FINANCE CHARGES**, shall at our option become immediately due and payable and we can terminate your Credit Line Account by sending you notice, if any of the following occur:

> (a)  You have at any time in connection with this Credit Line Account, including your application for same, committed fraud or have made, or make at anytime, any material misrepresentation;

> (b)  Failure to make any payment under this Agreement;

> (c)  Your action or inaction adversely affects the collateral for the Credit Line Account or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the Property, failure to pay taxes, failure to maintain adequate insurance for the Security, death of all persons liable on the Credit Line Account or the death of any of the Borrowers if the collateral is adversely affected by such death, transfer of title or sale of the Property, the Property is taken through eminent domain, creation of a senior lien on the Property without our permission, foreclosure by the holder of a prior lien or the  use of the dwelling for prohibited purposes if it subjects the Property to seizure.

**24. Suspension or Reduction.** In addition to any other rights we may have, (neither notice nor your agreement is required), we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(a) The value of the Property declines significantly below the Property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the credit limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances;

(b) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances;

(c) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under paragraph 23, "Termination and Acceleration", obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the Property, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the Property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances;

(d) Government action prevents us from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement, or impairs our security interest such that the value of the Property is less than 120 percent of the credit line;

(e) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice. We may charge your account for appraisal and Credit Report fees we incur in investigating whether any condition permitting us to suspend your credit privileges or reduce your credit limit continues to exist;

(f) The maximum **ANNUAL PERCENTAGE RATE** is reached.

If your Credit Line is suspended or terminated, you must immediately destroy all Credit Line checks and any other access devices. Any use of checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of such checks or other Credit Line access devices not returned to us.

**25. Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems).

**26. Collection Costs.** If you fail to abide by any terms of this Agreement, and if we are permitted to do so by applicable law, we may hire or pay someone else to help collect your Credit Line Account. You will pay all reasonable collections costs, including reasonable attorney's fees incurred by us in the collection of amounts due under this Agreement to the extent not prohibited by applicable law. This includes, subject to any limits under applicable law, our legal expenses whether or not there is a lawsuit and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay of injunction), appeals, and any anticipated post-judgment collection services.

**27. Delay in Enforcement.** Failure at any time by us to exercise any of our rights hereunder shall not constitute a waiver of our right to exercise the same at a later time.

**28. Default.** You will be in default under this Agreement if any of the following occurs, each of which constitutes a breach of a material obligation of yours under this Agreement:

(a) You fail to make any payment when due or to pay any charge or fee when due;

(b) Your action or failure to act adversely affects our security for your Credit Line Account or a right we have in the security;

(c) A court determines that you are bankrupt or insolvent; or

(d) You gave or give us false or materially misleading information in connection with any extension of credit to you under your Credit Line Account.

Page 7

**29. Results of Default.** If you are in default, we may lower your Credit Limit, we may refuse to make any further advances under this Agreement, we may refuse to pay any outstanding checks that would require us to make an additional credit advance to you, we may foreclose on the real property described in the Mortgage securing your Credit Line Account, we may take whatever other action is permitted under the Mortgage, and we may exercise any and all of our rights with respect to any other property securing your Credit Line Account. We also may demand that you pay the full amount you owe on your Credit Line Account immediately.

You agree to pay any costs we incur in collecting what you owe following your default to the extent not prohibited by applicable law. If we have to sue you to collect what you owe, you agree to pay our legal fees, including court costs to the extent not prohibited by applicable law. In addition to our other rights and remedies under this agreement and the Mortgage, we reserve the right to honor the check or other device used to obtain an advance without permanently raising your credit limit. If we honor the check or other device, the amount that is more than your credit limit will be due and payable immediately.

**30. Cancellation by You.** If you cancel your right to credit advances under this Agreement, you must notify us in writing and destroy all Credit Line checks and any other Credit Line access devices. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement and you will continue to remain liable for any further credit advances.

**31. Prepayment.** You may make additional payments or may pay back more than the Minimum Payment Due at any time without penalty, subject to Section 22 (b), except we will be entitled to receive all accrued **FINANCE CHARGES**, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. If you mark a check, money order, or other instrument sent in payment with "Paid in Full" or with similar language, we may accept the payment, and you will remain obligated to pay any further amount owed to us under this Agreement.

**32. Notices.** All notices will be sent to your address as shown in this Agreement unless you notify us in writing of any change in your address or name within thirty (30) days of the change. On joint accounts, notices sent to one will be considered notice sent to all.

**33. Information About You.** You authorize us to get financial information about you from third parties, including, but not limited to, a credit bureau, your employer, or another financial institution. You also authorize us to disclose information about your creditworthiness and this Account to a credit bureau, our affiliates and subsidiaries, and to others, unless expressly prohibited by applicable law. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense, except as provided for in paragraph 24, "Suspension or Reduction".

**34. Documentation.** You agree to execute or re-execute any document that we request in order to correct any error or omission in the original Agreement, security instrument, or other Credit Line Account related documents, including, but not limited to, Confirmatory or Corrective security instruments.

**35. Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account to another lender, entity, or person, and to assign our rights under the Mortgage. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives.

**36. NEGATIVE INFORMATION:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**37. Tax Deductibility.** You understand that Lender makes no representation or warranty whatsoever concerning the tax consequences of this Credit Line Account, including the deductibility of interest, and that you should consult with your own tax advisor for guidance on this subject. You also agree that Lender shall not be liable in any manner whatsoever should the interest paid on the Credit Line Account not be deductible.

**38. Governing Law.** This Agreement will be governed by and interpreted in accordance with federal law and to the extent not preempted by the laws of the state where the Property is located.

Page 8

**39. Interpretation.** The names given to paragraphs or sections in this Agreement are for reference purposes only. They are not to be used to interpret or define the provision of this Agreement. You agree that this Agreement, together with the Mortgage, is the best evidence of your agreement with us. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court may enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Mortgage, or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**40. Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a copy of this Agreement, including the Fair Credit Billing Notice and the early Home Equity Line of Credit application disclosure, in addition to the handbook entitled "When Your Home Is On the Line: What You Should Know About Home Equity Lines of Credit," and disclosures/notices provided under applicable state law; given with the application before signing the Mortgage and before using your Credit Line Account.

If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any one of you to pay all amounts due under this Agreement, including credit advances made to any of you. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any of you from responsibility under this Agreement, and the other Borrowers will remain responsible.

You, the undersigned, certify that you have insured the property as identified in Section 12, entitled "Collateral", against loss by fire for the replacement cost of the buildings or appurtenances on the Property, and that the policy includes extended coverage and has a standard mortgage clause making loss payable to Citizens Bank of Pennsylvania as its interest may appear. You agree to maintain such insurance until this Agreement is paid in full.

You understand that you may purchase any required insurance through any duly licensed insurance agent and insurance company that is reasonably acceptable to us. You are not required to deal with any of our affiliates when choosing an insurance agent or insurance company. Your choice of a particular insurance agent or insurance company will not affect our credit decision, so long as the insurance provides adequate coverage with an insurer that meets our reasonable requirements.

All documents related to insurance for this loan should be mailed to the following address:
Citizens Bank Consumer Finance Operations
PO Box 42008
Providence, RI 02940-2008
(800)708-6680

**Authorization of Payments to Third Parties**

| | $ | 45,000.00 | Credit Limit |
|---|---|---|---|
| | | | Amount paid to others on my behalf |
| - | $ | 1,274.00 | Paid to CB/TRWRDSV |
| - | $ | 331.00 | Paid to CAP1/BOSCV |
| - | $ | 12,947.00 | Paid to CBNA |
| - | $ | 6,074.00 | Paid to CITIZENS BANK |
| - | $ | 8,753.00 | Paid to CITIZENS BANK |
| - | $ | | Paid to |
| - | $ | | Paid to |
| - | $ | | Paid to |
| - | $ | | Paid to |
| - | $ | | Paid to |
| - | $ | | Paid to |
| - | $ | | Paid to |
| - | $ | | Paid to |
| - | $ | | Paid to |
| - | $ | | Paid to |
| - | $ | | Paid to |
| + | $ | 0.00 | Amount received from borrower |
| - | $ | 0.00 | Total fees to be paid by borrower |
| - | $ | 15,621.00 | Undisbursed Funds |

**Disbursement Account Information:**

Account Type: Check          Account Number:

You understand that no loan proceeds will be disbursed until any notice of the right to cancel time period specified has expired.

You authorized disbursements to lien creditors and to Citizens Bank loan or line accounts listed above and acknowledge receipt of a filled in copy of this itemization of amount financed.

Citizens Bank will provide to you the disbursement check(s) payable to non-lien creditor(s) listed above. You are to forward the referenced disbursement check(s) directly to named creditor(s) for appropriate processing by the non lien creditor. In order to secure our lien position, Citizens Bank is authorized to add to the principal balance, or access deposit accounts to cover any shortage.

In the event a pay-off sent to another creditor is insufficient, Citizens Bank is authorized to add to the principal balance, or access your deposit account funds held by us to cover such shortage in order to complete your transaction and secure our lien position. You will receive notification in the event an additional amount is needed.  This amount should not exceed $1,000.00; further remedies may apply if a greater amount is needed.

This may result in a higher final payment due.

You acknowledge that you authorize us (and our affiliates, agents and contractors) to contact you at any number you provide to us, from which you call us, or at which we believe we can reach you, and that we may contact you for any reason, including regarding any request you make for a loan or other product, to service or collect on every account you currently have with us or may have with us in the future and regarding any other products or services we are providing to you or which we provide to you in the future. You authorize us to contact you in any manner, including by means of automated dialing devices, prerecorded messages, wireless push notifications, or text messages, even if you are charged for receiving the communication and even if you will receive the communication on a mobile or wireless device. You agree that such calls are not unsolicited and that we may monitor and/or record them.

You acknowledge that any payoff amounts referenced in the of Authorization of Payments to Third Parties section of this Agreement were estimates based on the balances listed on your credit bureau report(s), or obtained from the lien creditors on your behalf.

You acknowledge that you received and read, as applicable, the Home Equity disclosure statements provided to you during the application process, which include *Important Terms*, *When Your Home is On the Line*, *Servicing Disclosure Statement*, *Good Faith Estimate*, *Right to Receive a Copy of an Appraisal*, and *Citizens Privacy Notice*.

If there is more than one signer below, it is my/our intention that this account be a joint account.

You acknowledge that with your application, you provided your consent to us to check your employment and credit history with any source and to answer questions about your credit experience with us.

**READ THIS AGREEMENT BEFORE YOU SIGN. REVIEW THE AUTHORIZATION OF PAYMENTS TO THIRD PARTIES SECTION, IN PARTICULAR ENSURE DISBURSEMENT ACCOUNT INFORMATION IS ACCURATE. LOAN PROCEEDS WILL BE DISBURSED TO THE ACCOUNT LISTED. DO NOT SIGN THIS AGREEMENT IF IT CONTAINS BLANK SPACES. THE AGREEMENT IS SECURED BY A SECONDARY MORTGAGE ON YOUR REAL PROPERTY.**

This Agreement is dated 05/17/2016 .  THIS AGREEMENT IS SIGNED UNDER SEAL.

BORROWER:

X _____
IDA SPRUILL

X _____

X _____

X _____

Effective Disbursement Date:  05/23/2016

# BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on the back of your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

  Your name and account number.

  The dollar amount of the suspected error.

  Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including **FINANCE CHARGES**, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any **FINANCE CHARGES** related to any questioned amount. If we didn't make a mistake, you may have to pay **FINANCE CHARGES**, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.